ACCEPTED
04-15-00433-cv
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/4/2015 1:21:15 PM
KEITH HOTTLE
CLERK

NO. 04-15-00433-CV

IN THE COURT OF APPEALS
FOR THE FOURTH DISTRICT OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/4/2015 1:21:15 PM
KEITH E. HOTTLE
Clerk

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY and
POST OAK CLEAN GREEN, INC.,

*Appellants*,

v.

GUADALUPE COUNTY GROUNDWATER
CONSERVATION DISTRICT,

*Appellee*.

---

**BRIEF OF *AMICI CURIAE***
**WASTE MANAGEMENT OF TEXAS, INC. AND**
**TEXAS ASSOCIATION OF BUSINESS**

---

Bryan J. Moore
State Bar No. 24044842
bmoore@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
98 San Jacinto, Suite 1420
Austin, Texas  78701
Telephone: 512.891.8000
Facsimile: 512.391.8099

COUNSEL FOR
WASTE MANAGEMENT
OF TEXAS, INC.

Amanda M. Martin
State Bar No. 24074744
amartin@txbiz.org
TEXAS ASS'N OF BUSINESS
1209 Nueces Street
Austin, Texas  78701
Telephone: 512.637.7708
Facsimile: 512.477.0836

COUNSEL FOR
TEXAS ASSOCIATION
OF BUSINESS

# IDENTITY OF PARTIES AND COUNSEL

*Amici curiae* adopt Appellants' lists of parties and counsel and supplement those lists as follows:

***Amici Curiae***

> Waste Management of Texas, Inc. ("Waste Management")
> Texas Association of Business ("TAB")

***Counsel for Waste Management***

> Bryan J. Moore
> State Bar No. 24044842
> bmoore@bdlaw.com
> BEVERIDGE & DIAMOND, P.C.
> 98 San Jacinto, Suite 1420
> Austin, Texas 78701
> Telephone: 512.891.8000
> Facsimile: 512.391.8099

***Counsel for TAB***

> Amanda M. Martin
> State Bar No. 24074744
> amartin@txbiz.org
> TEXAS ASS'N OF BUSINESS
> 1209 Nueces Street
> Austin, Texas 78701
> Telephone: 512.637.7708
> Facsimile: 512.477.0836

## **RULE 11(c) STATEMENT**

In accordance with Tex. R. App. P. 11(c), *amici curiae* disclose that Waste Management is the source of any fee paid or to be paid for preparing this brief, and that such fee, if paid, will be paid to counsel for Waste Management.

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ..........................................................i

RULE 11(c) STATEMENT .......................................................................... ii

STATEMENT OF THE CASE ........................................................................5

STATEMENT REGARDING ORAL ARGUMENT ...........................................5

ISSUES PRESENTED ..................................................................................5

STATEMENT OF FACTS ..............................................................................5

    I.     Waste Management's Interest In This Case.....................................5

    II.    TAB's Interest In This Case..........................................................8

SUMMARY OF THE ARGUMENT ................................................................10

ARGUMENT ...........................................................................................11

    I.     The District Has No Authority To Supersede The Commission's Exclusive Jurisdiction Over The Permitting, Siting, Construction, and Operation Of MSW Facilities ............................................................11

        A.    The District's Lack Of Authority Is Evident From The Regulatory Framework For MSW Landfill Permitting ...................................11

        B.    The District Cannot Meet The Criteria That The Legislature Has Established For Special Districts To Have A Role In Solid Waste Management..................................................................................15

        C.    The District Cannot Reasonably Claim The Authority To Control Land Use And Development That The Legislature Has Historically Denied To Counties ..................................................16

        D.    The District Cannot Dictate The Outcome Of The Permitting Process, But It Is Free To Participate In That Process .................19

    II.    The District's Claim Is Not Ripe.......................................................21

PRAYER ..................................................................................................22

# TABLE OF AUTHORITIES

PAGE

30 TEX. ADMIN. CODE § 330.23 ...................................................................... 12, 13, 14

30 TEX. ADMIN. CODE § 330.23(d) ....................................................................15

30 TEX. ADMIN. CODE § 330.71(b). ....................................................................6

30 TEX. ADMIN. CODE §§ 55.152-.156. ........................................................ 19, 20

TEX. HEALTH & SAFETY CODE § 361.011(a)..........................................................12

TEX. HEALTH & SAFETY CODE § 361.067 ...........................................................13

TEX. HEALTH & SAFETY CODE § 361.165. ..................................................... 15, 16

TEX. HEALTH & SAFETY CODE § 363.112(a)..........................................................16

TEX. WATER CODE § 26.127(a). ..........................................................................12

iv

## STATEMENT OF THE CASE

*Amici curiae* adopt Appellants' statements of the case.

## STATEMENT REGARDING ORAL ARGUMENT

*Amici curiae* support Appellants' requests for oral argument, but, per Tex. R. App. P. 39.5, do not seek to share time with Appellants at oral argument or to otherwise orally argue the case to the Court.

## ISSUES PRESENTED

*Amici curiae* adopt Appellants' statements of the issues presented, but argue herein only a subset of those issues, as set forth below.

## STATEMENT OF FACTS

*Amici curiae* adopt Appellants' statements of facts and supplement them as follows.

## I.    Waste Management's Interest In This Case

*Amicus curiae* Waste Management and its affiliates and subsidiaries own and/or operate over 23 commercial solid waste facilities in Texas, including 14 active municipal solid waste ("MSW") landfill facilities. These facilities serve the waste disposal needs of residents, businesses, and municipalities throughout Texas. Each of these facilities is permitted to operate by the Texas Commission on Environmental Quality ("TCEQ" or the "Commission"). The permitting and construction of landfill facilities require significant capital

5

expenditures and investments, particularly in the early stages of the project. Because of this, and to ensure a long-term, stable supply of waste disposal capacity in the State, MSW landfill permits are normally issued by TCEQ for the life of the site. *See* 30 Tex. Admin. Code § 330.71(b).

Waste Management has an interest in ensuring that if an application for a MSW permit satisfies all applicable statutory and regulatory requirements, then the application will be granted and the permit will be issued by the Commission authorizing the construction and operation of the proposed MSW facility, and that the TCEQ-issued permit will remain valid and effective (unless amended, suspended, or revoked by the Commission in accordance with the applicable legal requirements). These have been the fundamental tenets of the MSW regulatory program in Texas since its inception. Waste Management has invested significantly in MSW projects and facilities throughout the State, and has entered into long-term contracts for waste disposal, with the understanding that this core regulatory structure could not be undone by a groundwater conservation district or other special district at the stroke of a pen.

This case implicates the exclusive jurisdiction of the Commission in the area of MSW permitting, and whether the Commission's permitting process, or a MSW permit issued by TCEQ, may be vetoed by a groundwater conservation district or other special district. These issues are of great importance to Waste

6

Management and its customers. Any outcome of this case that may allow opponents of MSW projects to circumvent TCEQ's public participation process, or that may jeopardize the primacy of a TCEQ-issued MSW permit, or otherwise jeopardize Waste Management's ability to site, construct, operate, and expand a MSW facility per the terms of a permit issued by TCEQ, could, in turn, put in jeopardy the viability of Waste Management's core business and its ability to provide reliable, long-term waste disposal services to meet its customers' needs.

The viability of Waste Management's business depends upon uniform, statewide standards for the permitting, siting, construction, and operation of MSW facilities. Absent such uniformity, there is regulatory uncertainty, and such uncertainty hinders the significant capital expenditures and investments necessary to develop and maintain the MSW disposal capacity sufficient to meet the needs of Waste Management's customers and the State's rapidly growing population. A multi-decade MSW facility project becomes substantially more risky, and proportionately less viable, if years of work and investment could be nullified by a groundwater conservation district or other special district or entity with no authority over solid waste management. Allowing such entities to block TCEQ permits for MSW facilities, or to limit or prohibit the siting of TCEQ-permitted MSW facilities, could potentially lead to

7

a regulatory free-for-all, with local interests and bias dictating which MSW facilities may be permitted, where such facilities may be located, and which existing, permitted MSW facilities must close. Such a regulatory environment would undoubtedly result in local, regional, and statewide reductions in MSW disposal capacity, both existing and projected.

## II. TAB's Interest In This Case

TAB is Texas' leading employer organization. Representing companies from the largest multi-national corporations to small businesses in nearly every community in Texas, TAB works to improve the State's business climate and to help make the Texas economy the strongest in the world. For more than 90 years, TAB has been on the front lines of the legislative, regulatory, and judicial battlefields, fighting for issues that impact business to ensure that employers' opinions are being heard. In addition, TAB is the state chamber of commerce representing over 200 local chambers and the many thousands of Texas businesses that support those local business organizations.

TAB's membership includes national, regional, and local waste management companies that own and/or operate MSW facilities in Texas, as well as countless other businesses that rely upon a stable, long-term supply of waste disposal capacity throughout the State and a state environmental permitting process that is not subordinate to vague regulations that can be wielded arbitrarily by special

8

districts. Indeed, almost every TAB member business holds an environmental permit from the State, or utilizes, either directly or indirectly, one or more of the State's MSW facilities. Accordingly, TAB's broad interest in a consistent and predictable regulatory environment and narrow interest in the particular legal issues presented in this case are aligned with that of Waste Management, as discussed above.

Allowing groundwater conservation districts or other special districts, or any other governmental entities without specific authority over solid waste management, to usurp the statewide role of the Commission and dictate where MSW facilities may be located on a local or regional level would place TAB's member companies at a competitive disadvantage within and outside of the State.

Since businesses pay well over half of the tax burden in Texas, TAB's members also have a direct interest in local and state agencies operating as efficiently as possible. Allowing local interests to usurp the established roles of state agencies that have been granted authority over solid waste management will result in confusion and conflict between jurisdictions. These entities must recover these cost increases through taxes, further magnifying the impact on Texas businesses and consumers. In fact, faced with the regulatory confusion that this

9

case exemplifies, many businesses may elect not to locate in Texas at all, or may elect not to invest in expansion of facilities that are located in the State.

## SUMMARY OF THE ARGUMENT

The Commission has exclusive jurisdiction over the permitting, siting, construction, and operation of MSW facilities in Texas. Additionally, the Guadalupe County Groundwater Conservation District's (the "District's") claim is not ripe. The Court's affirmation of either argument requires dismissal of the District's lawsuit.

By writing a rule prohibiting waste disposal in certain areas, and seeking to validate that rule through a declaratory judgment action in district court, the District attempts to usurp the Commission's jurisdiction over the permitting, siting, construction, and operation of MSW facilities in Texas. By law, the Commission's jurisdiction over such matters is exclusive, and the District has no authority to supersede it.

The District has not yet been harmed, and may never be harmed. The District will have recourse in the courts *if* it exhausts its administrative remedies and *if* the Commission ultimately decides to issue Post Oak Clean Green, Inc.'s ("Post Oak's") permit. Until such time, the District's claim is not ripe.

10

## ARGUMENT

### I. The District Has No Authority To Supersede The Commission's Exclusive Jurisdiction Over The Permitting, Siting, Construction, and Operation Of MSW Facilities

For the reasons set forth in Appellants' briefs, the Commission has exclusive jurisdiction over the permitting, siting, construction, and operation of MSW facilities in Texas. The District has no such jurisdiction and cannot effectively veto a TCEQ-issued permit for the siting, construction, and operation of a MSW facility.[1]

#### A. The District's Lack Of Authority Is Evident From The Regulatory Framework For MSW Landfill Permitting

While the Commission's exclusive jurisdiction over matters relating to MSW management is well documented in Appellants' briefing on this issue, it is also reflected in the permitting process for MSW landfills – a process that Waste Management and TAB know well from experience. In addition to the general public participation process for TCEQ permitting decisions, which allows those potentially affected by a proposed permit to voice their concerns, some entities have a defined role in the permitting of MSW landfills that is expressly recognized by law. The District is not among those entities. And while some entities have a legally-recognized role to play, no entity plays a greater role than the Commission,

---

[1] This argument is consistent with, and *amicus curiae* herein adopts, Appellant TCEQ's argument regarding redressability. *See* Br. of Appellant TCEQ at 31-36.

11

which has the final say in the permitting, siting, construction, and operation of MSW landfills in Texas.

The Water Code directs all "state agencies engaged in water quality or water pollution control activities" to "coordinate those activities with the [C]ommission." Tex. Water Code § 26.127(a). Additionally, under the Solid Waste Disposal Act, the Commission must "coordinate municipal solid waste activities." Tex. Health & Safety Code § 361.011(a); *see also id.* § 361.017(a) (requiring TCEQ to "coordinate industrial solid waste activities and hazardous municipal waste activities"). While such coordination may occur at any time (and at various and multiple times) throughout the multi-decade period spanning the siting, construction, and operation of a MSW landfill, it is specifically provided for in the MSW landfill permitting process, per TCEQ's regulations.

For instance, under 30 Tex. Admin. Code § 330.23, TCEQ is required to "coordinate the review of all permit applications" for MSW landfills with certain state and federal agencies. Groundwater conservation districts, such as the District, are not among the agencies that TCEQ must coordinate with regarding the Commission's review of an application for a MSW landfill permit.[2] Furthermore,

---

[2] Additionally, permit applicants may also be required to document, in their application, that they have coordinated with certain state and/or federal agencies, councils of government, and/or local governments regarding the application or proposed landfill. *See, e.g.*, *id.* § 330.61(i)(4)-(5), (m)(2), (n)(2), (o), (p). Here again, groundwater conservation districts are not among the listed entities that must be consulted.

12

the Commission is required only to "solicit recommendations" or "comments" from each listed agency, or to otherwise "coordinate" with each agency, regarding the limited portions of the MSW landfill permit application that concern matters within the agency's area-specific jurisdiction (e.g., coordinating with and soliciting recommendations from the Texas Department of Transportation ("TxDOT") regarding the adequacy and design capacity of state-maintained roadways used to access a MSW landfill). *Id.* § 330.23(a)-(c), (h).[3]

While these listed agencies are entitled, by rule, to the requisite Commission coordination, and to review and comment on all permit applications for MSW landfills, that is the extent of their role in the permitting process – they have no decision-making authority. They have no authority to decide whether a landfill permit should be issued; where a landfill should or should not be sited; or how a landfill should be constructed and operated. This holds true even if the coordinating agency has concerns regarding the permit application that fall within the agency's jurisdiction or particular area of expertise (e.g., if the Texas Parks and Wildlife Department ("TPWD") has concerns regarding impacts to threatened or

---

[3]    *See also* Tex. Health & Safety Code § 361.067 (providing that the Commission shall mail a copy of an administratively complete permit application or a summary of its contents to certain governmental entities (i.e., mayor, county judge, and local and county health authorities) and that such entities "shall have a reasonable time . . . to present comments and recommendations on the permit application before the [C]omission acts on the application").

endangered species).  The Commission is required to "consider information provided by" the agency, but the Commission is under no obligation to defer to the agency, and the agency has no authority to decide whether the application should be granted.  *Id.* § 330.23(h).

An entity, such as the District, that the Commission is not even required to consult in the MSW landfill permitting process cannot reasonably argue that it has the authority to preclude or void a MSW landfill permit, or to decide where a landfill can or cannot be sited, when the entities that the Commission is required to consult in the permitting process have no such authority.  Just as TxDOT and TPWD – agencies with which the Commission is required to coordinate – have particular expertise that may be relevant to the review of a MSW landfill application, groundwater conservation districts may have particular expertise regarding the groundwater aquifers within their jurisdiction, and that expertise may be of use to the Commission in deciding whether a landfill application should be granted.  But groundwater conservation districts and other entities with whom the Commission is not required to coordinate cannot reasonably claim any role in the permitting process that is greater than (or even on par with) that of the listed coordinating agencies.  Given that the legally-recognized coordinating agencies, such as TxDOT and TPWD, have no authority to preclude or override the issuance

14

of a MSW landfill permit, or limit where a landfill may be sited, groundwater conservation districts and other similarly situated entities clearly have no such authority.

**B.      The District Cannot Meet The Criteria That The Legislature Has Established For Special Districts To Have A Role In Solid Waste Management**

The Legislature has authorized political subdivisions to regulate MSW disposal only under express, limited circumstances that do not apply to the District. Such limited authority is prescribed by § 361.165 of the Solid Waste Disposal Act. Tex. Health & Safety Code § 361.165. That section allows a political subdivision to assume the authority to serve "as the coordinator of all solid waste management practices and activities for municipalities, counties, and other governmental entities in its jurisdiction that have solid waste management regulatory powers or engage in solid waste management practices or activities." *Id.* § 361.165(d)(1). The District has no ability to assume such authority, nor has it attempted to do so. A political subdivision can avail itself of the authority provided by § 361.165 only if it "(1) has jurisdiction in more than one county; and (2) has been granted the power by the [L]egislature to regulate solid waste handling or disposal practices or activities in its jurisdiction." *Id.* § 361.165(a)(1)-(2).[4] The District cannot satisfy

---

[4]      *See also* 30 Tex. Admin. Code § 330.23(d) (noting that the Solid Waste Disposal Act "applies to political subdivisions of the state to which the legislature has given waste handling authority for two or more counties").

15

either of these two criteria. The District's jurisdiction does not extend beyond Guadalupe County, and the Legislature has not granted the District any power to regulate solid waste handling or disposal.

Moreover, even if the District – or any other groundwater conservation district – could meet the § 361.165 criteria for political subdivisions, that section allows qualifying political subdivisions to exercise only those solid waste management powers that the Solid Waste Disposal Act grants to counties. *See id.* § 361.165(b). And, in the exercise of those powers, the qualifying political subdivision "is subject to the same duties, limitations, and restrictions applicable to a county under" the Act. *Id.* § 361.165(c). Accordingly, the Commission "may supersede any authority granted to or exercised" by a political subdivision under § 361.165. *Id.* § 361.151(c).[5]

### C. The District Cannot Reasonably Claim The Authority To Control Land Use And Development That The Legislature Has Historically Denied To Counties

Unable to avail itself of the limited, conditional authority provided by § 361.165 of the Solid Waste Disposal Act , the District attempts to circumvent the law entirely and regulate the siting and operation of landfills in Guadalupe County

---

[5] Additionally, if the qualifying political subdivision sought to exercise a county's authority to prohibit the disposal of MSW in certain areas, then the political subdivision would need to "specifically designate" the areas within its jurisdiction where the disposal of MSW will not be prohibited. Tex. Health & Safety Code § 363.112(a); *see also* Br. of Appellant Post Oak at 22-24.

16

under the District's general mandate to protect groundwater within its geographic boundaries. If such general, limited authority sufficed to allow the District to assert jurisdiction over MSW landfills (it does not), then the District ostensibly could use that same authority to control various other land uses under the banner of groundwater protection. Indeed, the District's rule prohibiting the application of waste within certain areas of Guadalupe County is a targeted land use control. The Texas Legislature has a long history of considering, and failing to pass, bills to grant counties broad authority to control land use. Given that, as compared to counties, groundwater conservation districts are a more limited form of local government, it is reasonable to conclude that the Legislature never intended to implicitly confer upon groundwater conservation districts the broad land use control authority that it has historically declined to confer upon counties after much debate and consideration.

For instance, House Bill 3447 in the 80th legislative session would have authorized certain counties located in a "priority groundwater management area" to regulate land development in the unincorporated area of the county by various means. Tex. H.B. 3447, 80th Leg., R.S. (2007). The bill failed to pass. Much broader authority to "protect the public health, safety, or welfare" would have been conferred upon counties by bills under consideration in multiple legislative

sessions. Tex. H.B. 588, 76th Leg., R.S. (1999); Tex. H.B. 3781, 76th Leg., R.S. (1999); Tex. H.B. 2617, 77th Leg., R.S. (2001); Tex. H.B. 140, 78th Leg., R.S. (2003); Tex. H.B. 3735, 81st Leg., R.S. (2009). But those bills, too, failed to pass. The legislative history is replete with other failed efforts to empower counties to regulate land use, development, and zoning.[6] The District's attempt to assume such regulatory authority, without specific statutory authorization, is entirely at odds with this legislative history. The District cannot reasonably claim such broad authority under its general mandate when the Legislature has time and again considered and rejected specific legislation that would expressly confer such authority upon counties.

Furthermore, when the Legislature has authorized counties to regulate land use, development, or zoning, it has restricted that authority to prescribed, limited circumstances.[7] In the context of this case, the most relevant example of such limited county authority is Tex. Health & Safety Code § 364.012, which authorizes counties to prohibit solid waste disposal if it "is a threat to the public health, safety,

---

[6]    *See, e.g.,* Tex. H.B. 153, 84th Leg., R.S. (2015) (relating to the adoption of noise regulations by certain counties); Tex. H.B. 924, 84th Leg., R.S. (2015) (relating to the authority of a county to adopt a fire code); Tex. H.B. 662, 82nd Leg., R.S. (2011) (relating to authorizing certain counties to adopt buffer zone regulations and comprehensive land development plans); Tex. H.B. 3492, 82nd Leg., R.S. (2011) (relating to authorizing counties to adopt buffer zone regulations); Tex. H.B. 2167, 81st Leg., R.S. (2009) (relating to granting Hill Country counties authority to regulate certain land use); Tex. H.B. 757, 79th Leg., R.S. (2005) (relating to the authority of a county to enact certain land development regulations).

[7]    *See, e.g.,* Tex. Local Gov't Code, Tit. 7, Subtit. B (county regulatory authority).

18

and welfare," but only if the county specifically designates areas in the county where "solid waste disposal is not prohibited." Tex. Health & Safety Code § 364.012(a)-(b); *see also id.* § 363.112(a) (similarly authorizing a municipality or county to prohibit solid waste disposal if the municipality or county "specifically designate[s] the area of the municipality or county, as appropriate, in which the disposal of . . . solid waste will not be prohibited"). Here again, it is unreasonable to conclude that the Legislature saw fit to pass legislation expressly limiting county authority over something as locally significant as solid waste disposal, but yet intended to give groundwater conservation districts broader authority over landfill siting and operation by mere implication through a general mandate.

## D. The District Cannot Dictate The Outcome Of The Permitting Process, But It Is Free To Participate In That Process

Procedurally, the role of groundwater conservation districts and other similarly situated entities in MSW landfill permitting proceedings before the Commission is indistinguishable from that of the general public. While direct coordination with the Commission afforded certain agencies is not afforded to the District, the District is not without a voice in the MSW permitting process. In this case, the District has provided comments to TCEQ regarding Post Oak's pending landfill permit application – in writing, as well as orally at a public meeting. *See*

19

30 Tex. Admin. Code §§ 55.152-.156. Additionally, the District is participating in the contested case hearing on the permit application. *See id.* §§ 55.201(b)(4), .203.

This role for groundwater conservation districts in the landfill permitting process was specifically – and publicly – addressed by TCEQ nearly a decade ago. The Commission revised the entirety of its MSW rules in March 2006. *See* 31 Tex. Reg. 2502 (Mar. 24, 2006). In the context of that rulemaking, the Commission received and responded to comments on the proposed rule revisions. One such comment stated that:

> TCEQ should require double [landfill] liners within the area of a groundwater district if that district passes a resolution asking that the TCEQ impose this requirement, as this would place the decision on the need to protect groundwater in the hands of those with expertise in a particular aquifer system.

*Id.* at 2572. TCEQ refused to promulgate any such requirement. In its response to the comment, the Commission recognized the more limited role that groundwater conservation districts play in the MSW landfill permitting process: "An affected groundwater district or persons may comment or request a hearing regarding the adequacy of groundwater protection in a permit application if they deem that a double liner system is needed for groundwater protection." *Id.* Accordingly, nearly a decade ago, the Commission rejected the notion that a groundwater conservation district could pass a resolution (or rule) that would dictate the outcome of the MSW landfill permitting process, in whole or in part.

20

## II.     The District's Claim Is Not Ripe

The District should not be allowed to circumvent TCEQ's public participation process and pursue a premature challenge to Post Oak's permit application in the courts.  While Post Oak's application is pending before TCEQ, the District should be required to exhaust its administrative remedies through the established regulatory process, which, as discussed above, includes the opportunity for public comments and a contested case hearing on the application.  The District will have recourse in the courts *if* it exhausts its administrative remedies and *if* the Commission ultimately decides to issue Post Oak a MSW landfill permit.  In the interim, while the administrative proceedings are ongoing, the District will not be harmed, as Post Oak will not have the requisite authorization to construct and operate the MSW landfill that the District seeks to prohibit.

## PRAYER

For the reasons set forth above and in Appellants' briefs, *amici curiae* pray that the Court reverse the trial court's order denying the Commission's plea to the jurisdiction and render judgment dismissing the District's claim.

Respectfully submitted,

By: /s/ *Bryan J. Moore*
Bryan J. Moore
State Bar No. 24044842
bmoore@bdlaw.com
BEVERIDGE & DIAMOND, P.C.
98 San Jacinto Blvd., Suite 1420
Austin, Texas 78701
Telephone: 512.891.8000
Facsimile: 512.391.8099

COUNSEL FOR AMICUS CURIAE
WASTE MANAGEMENT OF TEXAS, INC.

By: /s/ *Amanda M. Martin*
Amanda M. Martin
State Bar No. 24074744
amartin@txbiz.org
TEXAS ASS'N OF BUSINESS
1209 Nueces Street
Austin, Texas 78701
Telephone: 512.637.7708
Facsimile: 512.477.0836

COUNSEL FOR AMICUS CURIAE
TEXAS ASSOCIATION OF BUSINESS

**CERTIFICATE OF SERVICE**

I certify that a copy of the Brief of *Amici Curiae* Waste Management of Texas, Inc. and Texas Association of Business was served on counsel of record via eFileTexas.gov and via email on the 4th day of November 2015, addressed as follows:

| | |
|---|---|
| Ken Paxton | *ken.paxton@texasattorneygeneral.gov* |
| Charles E. Roy | *charles.roy@texasattorneygeneral.gov* |
| Scott A. Keller | *scott.keller@texasattorneygeneral.gov* |
| Bill Davis | *bill.davis@texasattorneygeneral.gov* |
| Nancy Elizabeth Olinger | *nancy.olinger@texasattorneygeneral.gov* |
| Cynthia Woelk | *cynthia.woelk@texasattorneygeneral.gov* |

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Telephone: (512) 936-1896
Facsimile: (512) 370-9191

*Attorneys for Texas Commission on Environmental Quality*

| | |
|---|---|
| Marisa Perales | *marisa@lf-lawfirm.com* |

FREDERICK, PERALES, ALLMON
& ROCKWELL, PC
707 Rio Grande, Suite 200
Austin, Texas 77552-6894
Telephone: (512) 469-6000

*Attorneys for Guadalupe County Groundwater Conservation District*

| | |
|---|---|
| Christopher L. Dodson | *chris.dodson@bgllp.com* |
| Mark R. Wulfe | *mark.wulfe@bgllp.com* |

BRACEWELL & GIULIANI L.L.P.
711 Louisiana Street, Suite 2300
Houston, Texas 77002-2770
Telephone: (713) 223-2300
Facsimile: (713) 221-1212

*Attorneys for Post Oak Clean Green, Inc.*

John A. Riley                               *jriley@jgdpc.com*
JACKSON GILMOUR & DOBBS, P.C.
1115 San Jacinto Blvd., Suite 275
Austin, Texas 78701
Telephone: (512) 574-8861
Facsimile: (512) 574-8861

*Attorneys for Post Oak Clean Green, Inc.*

/s/ *Bryan J. Moore*
Bryan J. Moore

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limitations of Tex. R. App. P. 9.4(i)(3) because this brief consists of 3,771 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ *Bryan J. Moore*
Bryan J. Moore

24

627682v1  Austin 015142